Thank you your honor. Jonathan Schneller on behalf of Luis Proano. The Supreme Court in this court have made clear that the standard for invoking the right to remain silent is quote not a demanding one. All that's required is a statement clear enough that a reasonable officer in the circumstances would understand the suspect to be invoking his right to silence. The government's position in this appeal which is that no matter how clear an invocation looks on its face it can be rendered ambiguous by an after-the-fact squinting at the transcript and convincing yourself that maybe the suspect meant something else would make it very hard for suspects to invoke the right to silence and would encourage exactly the sort of badgering and overreaching that this Supreme this court and the Supreme Court have both warned against. It goes against this court's holding in Garcia that we don't run with strained interpretations of the record in order to justify an interrogation after an invocation and the court similarly emphasized in Anderson where it said we don't encourage conjecture and hair-splitting. We have a bright line rule where we look at how a reasonable officer would have understood the statement and here both invocations were very plainly. Well let me just say I have more difficulty with your second argument just speaking for myself so to me it all rises and falls on whether when he says I have nothing to say that actually means I have nothing to say and if it does it seems that everything else that comes after is not okay. I agree with that your honor I think the words I have nothing to say it's not every day where you get a case where your client used the exact word that a 9th Circuit en banc decision said was sufficient to invoke the rights of silence. The government's argument on that point is that he might have been saying he had nothing to say about the form which is fails on a number of levels. It's not how ordinary English speakers would say I have nothing to say about the form they would say something like I have nothing to say about that or I don't want to talk about the form anymore but no one would say I have nothing to say to change the subject. It means I have nothing to say it's a categorical statement that's unqualified. It also ignores the context that the statement was made in which is that Mr. Proana was under arrest he was handcuffed and the overwhelming question facing everybody was whether he was going to talk to the police officer and finally it ignores how the actual officers took his statement. They didn't say oh you have nothing to say about the form you don't want to talk about the form anymore and it would have been absurd if that's how they had responded. Inspector Lee said oh you don't want to talk to us. He understood precisely what Mr. Proano meant and in case after case this court has held that those kinds of subjective responses from the police officer are strong evidence of how an objective reasonable officer would have understood it. Just to give one example that's Garcia at page 781. The state court's view of the record is belied by the interrogating officers own statements during the interview. Here inspector Lee understood exactly what it was Mr. Proano meant to say and it was not that he didn't want to talk about the form. It was that he had nothing to say. But your honor I respectfully I believe that the second argument is as strong. It similarly features sweeping categorical language. That's where we have to stop and the government's position that it was referring back to 11 minutes earlier when he had mentioned. You know but when you're looking at the additional context it's a little bit cat-and-mouse of well maybe this area is okay maybe that area is not okay. I mean I again I'm just speaking for myself but none of that would matter if you're right about the first one. I agree your honor none of it would but I do think the argument is nothing in the statement that suggests he's referring back to some earlier comment earlier in the interrogation. These cases all of the cases that are cited in the briefs or this court has found Miranda violation in very few of them is the invocation the first thing out of the suspects mouth. There's often a back-and-forth before the invocation. Garcia is a good example of that where there had been extensive discussion before the invocation and when the state argued that the invocation could have been interpreted as a reference to this or that one this court rejected it and did the same in Anderson. The difficulty for you on the second statement it seems to me is that there's been a back-and- forth about well let me hear your questions what are they about and so it contextually it sort of morphed it seems to me. Right but the language he used didn't wasn't qualified in that way the language uses that's where we have to stop. But meaning what meaning on a certain topic or meaning altogether that to me is not clear. Well I respect your honor we have to stop I think means we have to stop so it'd be be different if you'd said I don't want to talk about that or let's talk about something else but we have to. So matters context matters. Context absolutely matters but I don't think the government cites any example of a case where a statement as clear as that's where we have to stop was found ambiguous regardless of the context. So I respect you know I agree with you that the first the first statement which occurred right off the bat when they were asking him if he wanted to talk doesn't even there's no context there that even remotely suggests ambiguity. I definitely agree with that but I do think that the second invocation was also very strong it was similarly categorical and nothing about it suggested it was subject-specific even if earlier in the interrogation Mr. Proano did express willingness to discuss some subjects. So there's nothing further I'll reserve. Actually counsel I at the state of our law Proano says I mean I have nothing to say. Would an officer be allowed to ask are you sure about that or just can't ask that? No your honor if you look at Jones and Garcia the officer said very little after the suspect invoked so in Garcia I believe they asked the suspect do you want to talk to us he said no and all the officers said back was no question mark and this court found that that was one question too many and in less than that the officers invoked his right or rather the suspect invoked his right to silence and the officers said I understand that but and before he could even finish the sentence the suspect cut him off and what Jones held is even that truncated abbreviated sentence was one question too many so yeah I do think that even that question would be impermissible. Thank you. Thank you you may save the rest of your time. Good afternoon your honors may I please the court Bram Alden for the United States. The law in this area is designed to accommodate two competing concerns. One is the suspects Miranda rights and the other the other side of the Miranda equation is the need for effective law enforcement. In order to accommodate do you disagree with the the principle though that once someone unequivocally invokes their right to remain silent all questioning has to stop. I do not just I agree with that principle but if it has to be both unequivocal and unambiguous. Okay so the only question it seems to me is when he said I have nothing to say which in Arnold we said was the classic statement you don't have to say anything more than I have nothing to say why doesn't that end everything it's unambiguous it's unequivocal it's an invocation of the right to silence what more is there to this case. Your honor I disagree with the context and I'm not saying that those words in most cases would not suffice in most cases they would. What's the context then? What's the context that lends the ambiguity? Your honor the context is that the only discussion that has happened at that point in the conversation. But it doesn't matter what the content I have nothing to say. So every case in which those words have sufficed to invoke a defendant's I mean because otherwise we have a situation where the police have to and I understand when these things happen it's a situation where the defendant and the officers are discussing the crime that the defendant is accused of. For example in Anderson this court said we're familiar with all of that and that's typically the way it is but the statement's clear. I mean because otherwise we have a situation where well the officers can they can ask a couple of questions okay well now I mean then the Miranda right goes right out the window. I mean it's got the police have to and I understand when these things go on that the police are if I can call it a game you know trying to I'm gonna go get a coke can I get to you anything would you like anything you know or something like that anything to get him to keep talking that yeah it's from their standpoint it's a game but from our standpoint it's a constitutional right. Absolutely but Your Honor I think this is the case where it is not a game. This is an officer who is genuinely attempting to discern a defendant's intent before there has been any conversation. That's what makes it even more unequivocal in my view. He's just been read his Miranda rights where the officer says I'm telling you that I'm not going to force you to talk to me and he says I have nothing to say. So he's responding directly to the Miranda warnings and isn't that exactly what they're there for so that he can invoke them. At that point in the conversation what had happened was the defendant signed the acknowledgment of rights form acknowledging that he understood his rights and then expressed reluctance to sign the waiver of rights portion of the same form and when he then was then the officer said do you want to talk to us but the defendant said where is the lawyer option and that was a legitimately confusing question because the form does not have a lawyer option on it. Well it was an unusual comment to make but the only possible ambiguity is that what he means instead of I have nothing to say is I have nothing to say until my lawyer gets here and that has the same effect. Got to stop questioning him. That's the same option. I want a lawyer. But that is why the officer the question is whether it was reasonable for the officer to understand that the defendant might be invoking or was clearly invoking when he then said I don't understand what you mean about the form. Assuming he was being truthful when he said I don't know what you're talking about, what the response came back I have nothing to say. And the only potential, you know, quirk is that maybe he meant I have nothing to say until you get me a lawyer but regardless whichever those options it is it doesn't help your argument it seems to me. I think the position of the government is that in this context all that has been discussed is the Miranda waiver form. The officer says I don't understand when the defendant mentions the lawyer option on the form. The defendant responds you don't understand. I mean I have nothing to say to which the officer does the right thing. He immediately asks oh you don't want to talk to us. Well that's the question before us. The right thing may be to say we're done. We're done. Goodbye. Well the question is does the officer have any reason not to see this as an unambiguous and unequivocal invocation. And I submit that there are reasons. The reasons are that the only conversation has been about the form itself not about the defendant's crime. The rights. The conversation has been about the rights. You understand the rights. Right. And there's a confusing statement about the lawyer option on the form. I have nothing to say. There's nothing. There's nothing. I have nothing to say. And then the policeman says something I've got to hear. And then he says the lawyer thing you know the lawyer thing or make some defendant does something like that. Is that on the back. Meaning on the back of the form I presume. Right. Yes. I think that's why it's confusing. A form or about anything else they're talking about his rights. His rights to a lawyer. Do you want to be silent. Yeah. I have nothing to say. But that is all in the context of the back of the form conversation that is that is that shouldn't have occurred. No that preceded the I have nothing to say comment. Right. It did. And that's why I say that it only seems to hurt your side of the argument in my view because the only other thing that's been brought up is that he has not only the right to remain silent but the right to have a lawyer. So it at best he wants both of those things. The context as I watch the video and as the court obviously can watch for itself is whether does the defendant's tone and demeanor. Does the fact that they are talking over each other. Does the fact that all has been discussed as the form indicate that it would have been reasonable for the officer not to be sure at that point that the defendant was in fact invoking his rights when there's been a confusing conversation about the back of the form. And the officer of course can take into account the fact that the defendant's tone and his demeanor may have suggested that he was wavering. The officer can take into account the fact that they're talking over each other and this is a fast conversation. I mean is this wavering? Is that how you viewed that statement? I mean he wasn't emphatic in saying I'm going to remain silent but it was quite clear I thought. I didn't see any. So I would say Your Honor that when he was asked to sign the portion of the form acknowledging his understanding of the rights he was not wavering whatsoever. And he immediately signed and didn't ask a question. And when asked to sign the portion of the form actually waiving his rights he appeared hesitant and reluctant. So I would think at that point. Because he didn't want to waive his rights. He wanted to invoke his rights. And he doesn't have to do it in writing. He can say it. So I believe that at that point he actually didn't know whether he wanted to invoke his rights or not. And as the entirety of the interview shows, and I completely understand that the entirety of the interview may not be used to cast retrospective doubt, but it does confirm that what the officer understood in that moment was reasonable. The defendant ultimately had a motive and incentive to talk and did want to talk. We don't allow that kind of look back, as you said. So if we were to hold that that statement, I have nothing to say, was unequivocal and clear, the rest of it is absolutely irrelevant, correct? Yes. Okay. And I think that the reason why you should look to the entirety of the interview is because all of the cases that the defendant has cited, from Smith by the Supreme Court to Jones and Garcia by this court, say that nothing, nothing prior to the statement evinced equivocation or ambiguity. Here, something, the defendant's willingness to sign a portion of the form but unwillingness or reluctance to sign another, evinced that he might not be sure that he was going to invoke. After that, the context and circumstances matter, as this court said in Sessoms, and the entirety of the interview can be used to confirm that there was initial wavering and that the defendant's ultimate intent was to talk. So while I do believe that if there is an unequivocal and unambiguous request at the outset that the conversation must end, the law is designed to encourage an officer to discern the defendant's genuine intent. This is not the kind of gamesmanship or aggressive police tactics that this court and the Supreme Court has been concerned with, such as in Anderson, I plead the fifth, plead the fifth, what's that? That's playing games with the defendant's language. But when the officer says, oh, you don't want to talk to us? He's actually trying in the most direct way he can to ask the defendant legitimately and genuinely, are you invoking? And all the defendant had to do at that point was say, yes, I don't want to talk. So the defense says that it would have been very hard for him to invoke. In fact, it would have been very easy, and the officer made it that way and then confirmed and confirmed and confirmed again that the defendant was willing to participate. Thank you, Counselor. You've used your time. I apologize. Thank you. No, that's no problem. I'd just like to make three brief points in response to Counsel's argument. The first is I think Counsel's argument gets things completely backwards. This argument that because he refused to sign a Miranda waiver, that somehow undermines the strength of his invocation. We cite a case in our reply brief called Andoverti, which says that refusal to sign this kind of waiver, is actually an indication that you're invoking. So what the government's argument comes down to is a sort of one plus one equals zero analysis, where you have a refusal to sign a waiver form, which indicates that you're invoking. You add to that an invocation, that's the exact words this court has said is sufficient, and somehow those two things together means you're not invoking. And respectfully, I think that gets things backwards. The second thing I'd like to point out is Counsel repeatedly suggests that the officer here acted in good faith when he asked this follow-up question. That may be the case, but we don't know that. And the point of this line of case law is that we don't need to know it, and we don't need to find out. It's a bright line rule that's designed to guard against manipulation. And the Supreme Court's explanation of it is that it applies to all police badgering and overreaching, explicit or subtle, deliberate or unintentional. So there's no bad faith limitation of this or good faith exception. We have a bright line rule that keeps us from having to get into this sort of inquiry. Finally, just in response to the note that Counsel closed on, where he says this is actually quite easy, all that the suspect had to do is just repeat that he had nothing to say. This argument's been raised again and again in these cases, and it's been rejected time after time. And I'll just quote from Jones in closing. In Jones's court held, it does not matter, as the California court and federal district court seem to suggest, that Jones did not repeat his request to remain silent later in the interrogation. Quote, So I understand Counsel's argument. He might have been able to repeat it, but Jones is just one of many cases that says it's not my client's burden to invoke a second time. It's the officer's burden to respect his invocation. Because they didn't do that, we ask that you reverse the judgment below. Thank you. Thank you, Counsel. We appreciate the arguments of both of you. They've been very helpful in the cases submitted. And as I mentioned earlier, let's take about a five-minute break. All rise.
judges: Graber, Owens, Mahan